UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Mary Briggs Henry, | ) | Civil Action No.: 5:17-cv-03055-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Mary Briggs Henry brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB"). This matter is now before the Court for review of the Report and Recommendation ("R & R") of United States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rules 73.02(B)(2)(a) and 83.VII.02 (D.S.C.). [ECF # 18]. The Magistrate Judge recommends that the Court affirm the decision of the Commissioner. This Court has thoroughly reviewed the record in this case and now issues the following Order.

**Statement of Facts and Procedural History**

This Court is tasked with reviewing the denial of Plaintiff's application for disability benefits. Plaintiff was born on September 12, 1957. Plaintiff applied for disability insurance benefits ("DIB") on November 13, 2015, alleging a disability onset date of January 1, 2015. Plaintiff alleges she is disabled due to arthritis, insomnia, hypothyroidism, low levels of potassium and muscle spasms. [ECF #6-6, Ex. 2E]. Briefly stated, Plaintiff suffered from low back pain and insomnia in 2014. An MRI from July 11, 2014 revealed mild to moderate multilevel degenerative disc disease and facet arthrosis. [ECF #6-7, Ex. 1F]. Another MRI performed on May 4, 2017 revealed Plaintiff had a bulging at the L2-L3

level, as well as bulging with facet joint arthropathy at the L4-L5 level. [ECF #6-8, Ex. 11F]. Throughout 2014 and 2015, Plaintiff received several medial branch blocks and underwent multiple radiofrequency ablations. [ECF #6-7, Ex. 3F]. In March of 2015, Plaintiff began physical therapy. [ECF #6-8, 4F].

In 2016, Plaintiff's treating physician, Dr. James Vest, stated that Plaintiff's low back pain was not completely relieved with medication and opined that Plaintiff could sit zero to two hours and stand or walk for zero to two hours. Dr. Vest also stated Plaintiff could not sit continuously in a work setting. Dr. Vest stated Plaintiff could occasionally lift and/or carry less than ten pounds, rarely lift and carry ten pounds, never lift twenty or more pounds, and could not stoop, kneel, pull, push, or bend. Finally, Dr. Vest stated Plaintiff would be absent from work more than three times per month. [ECF #6-8, Ex. 7F]. Dr. India Kimeko Robinson evaluated Plaintiff on April 22, 2016. Dr Robinson's records reveal decreased lumbar spine range of motion, worsening symptoms when walking and standing, positive Tinel's sign on the right, and a slow gait. [ECF #6-8, Ex. 9F]. A state medical examiner opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk, and sit about six hours of the workday, frequently climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl. [ECF #6-3, Ex. 3A].

At the hearing, Plaintiff stated that on an average day, she would stand and/or walk for a total of two or three hours a day and sit about the same amount of time. [ECF #6-2, pp. 51-54]. A vocational expert at the hearing classified Plaintiff's past work as that of a real estate agent, with acquired skills such as customer service, computer operations, recordkeeping, government forms, reference verification, document preparation, and sales. The vocational expert ("VE") also stated that these skills transferred to such occupations as loan closer or real estate clerks, both sedentary positions. The VE

stated that these positions would require very little vocational adjustment. [ECF #6-2, pp. 60-61]. The ALJ concluded that based on the testimony of the vocational expert, he concluded that Plaintiff had acquired work skills from her past relevant work that were transferable to other occupations. [ECF #6-2, p. 34].

Her claim was denied initially and upon reconsideration. After she requested and was granted a hearing, the ALJ denied her claim on June 5, 2017. Plaintiff's request for a review by the Appeals Council was eventually denied, making the findings and determination of the ALJ the final decision of the Commissioner. The ALJ reviewed all of the medical history in the record, as well as Plaintiff's testimony at the hearing. The ALJ subsequently made several findings.

The ALJ's findings were as follows:

> (1) The claimant last met the insured status requirements of the Social Security Act through December 31, 2016.
>
> (2) The claimant did not engage in substantial gainful activity during the period from her alleged onset disability date of January 1, 2015 through her date last insured of December 31, 2016 (20 CFR 404.1571 *et seq.*).
>
> (3) Through the date last insured, the claimant had the following severe combination of impairments: degenerative disc disease (DDD) and obesity (20 CFR 404.1520(c)).
>
> (4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) except that she can cannot climb ladders, ropes, or scaffolds. She can perform other postural activities occasionally. The

claimant must avoid concentrated exposure to heights and hazards.

(6) Through the date last insured, the claimant WAS unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on September 12, 1957 and was 59 years old, which is defined as an individual of advanced age, on the date last insured (20 CFR 404.1563).

(8)The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), and 404.1568(d)).

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2015, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

[ECF #6-2, pp. 26-34].

On November 10, 2017, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ ECF #11; ECF #13], and the Magistrate Judge issued a Report and Recommendation ("R&R") on January 25, 2019, recommending that the Commissioner's decision be affirmed [ECF #18]. Plaintiff filed objections on February 8, 2019. [ECF #20]. Defendant responded to these objections on February 20, 2019. [ECF #23].

**Standard of Review**

I. **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

II. **The Court's Review of the Magistrate Judge's Report and Recommendation**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's

5

recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

**Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title

6

20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to

7

impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is

---

prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

8

unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) (regarding burdens of proof).

**Analysis**

I.     **Past Relevant Work**

Plaintiff first objects to the Magistrate Judge's recommendation that the ALJ adequately assessed the evidence of Plaintiff's past relevant work as a real estate agent or broker in accordance with the applicable regulations. Specifically, Plaintiff argues that she did not perform this work at the substantial gainful activity level during the past fifteen years and thus, it was error to consider it past relevant work. She further argues it was error to find that she had transferrable job skills from work performed prior to the fifteen year period. Plaintiff argues this is particularly important because, upon a showing that she did *not* have transferrable skills from any past relevant work due to her age, her restricted range of sedentary work, and her inability to perform past relevant work, she would be found disabled.

According to SSR 82-62, a claimant's work experience is relevant when it is performed within the last fifteen years, lasts long enough for a claimant to learn how to perform that work, and when it is considered substantial gainful activity. *See also* 20 C.F.R. § 404.1565(b)(1). Substantial gainful activity ("SGA") is defined as work activity that involves doing "significant physical or mental activities." 20 C.F.R. § 404.1572(a). The regulations provide that work performed fifteen years or more "prior to the time of adjudication of the claim (or 15 years or more prior to the date the title II disability insured status requirement was last met, if earlier)" is *ordinarily* considered not relevant." SSR 82-62 (emphasis added). The regulations further provide that, "in some cases worked performed prior to the 15-year-period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations." SSR 82-62. However, as noted by

9

at least one circuit court, the regulations permit an ALJ to conclude that work performed before the fifteen year period can still be considered relevant work. *Smith v. Sec. of Health & Human Servs*, 893 F.2d 106, 108 (6th Cir. 1989). Further, the regulation's terms imply that this fifteen year period is intended to be a "guide" rather than a bright-line rule to help insure that remote work experience is not applied. *See Smith*, 893 F.2d at 109; SSR 82-62. Put succinctly, sometimes the facts of a case warrant consideration of work performed prior to this period if there appears to be a continuity of skills, knowledge, and processes that are the same.

The fifteen-year period in Plaintiff's case "began" on December 31, 2001; thus, work performed from the beginning of 2002 and onward is particularly relevant.[3] In her disability application, Plaintiff listed her job as a real estate broker from March 1996 until December 2014, and she indicated that she incorporated as Mary B. Henry, Inc. in 2002. [ECF #184]. Plaintiff testified at the hearing that she worked as a real estate broker until approximately two and a half years prior to the hearing in 2017. She testified that she made more than $5,000-6,000 as a realtor, and that at some point she was making around $60,000 to $70,000 as a realtor when she worked for realtor companies. [ECF #6-2, p. 43]. She then became self-employed as a real estate broker. [ECF #6-2, p. 44]. She agreed with the ALJ that she was making between $4,000 and $5,000 or $6,000 a year for the last fifteen years. [ECF #6-2, p. 44]. Her highest earnings in the fifteen-year period appear to be in the year 2002, when she made $8,312.00. [ECF #166,169].

Plaintiff initially argues that the Magistrate Judge engages in a post-hoc analysis in explaining

---

[3] Plaintiff argues that the relevant time period began in 2002, fifteen years from the date of the hearing, which was held on April 27, 2017. Plaintiff points to the ALJ's comments that he can look back as far as to 2002, as support for this contention. This distinction does not appear material because the practical effect of finding that the relevant time period began on December 31, 2001 is that the period effectively began at the beginning of 2002.

10

why the ALJ's decision is supported by substantial evidence. A review of the hearing transcript evidences the fact that the ALJ asked Plaintiff specific questions about her work history, including her earnings when she was working as a real estate agent for a company versus when she was self-employed. Further, the ALJ explained in his decision that he considered the Vocational Expert's testimony regarding Plaintiff's past skills to determine whether these skills would be transferrable. Plaintiff argues that this work does not qualify as SGA because her earnings in 2002 would equal $692.66 a month, which is lower than the presumed SGA level for monthly income in 2002. Plaintiff further argues that it would be an error to consider any work prior to the fifteen year period before the hearing. With respect to the amount of monthly earnings, under the regulations, self-employment earnings are evaluated differently for the purposes of determining SGA. *See* 20 C.F.R. § 404.1575(a) ("We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed" and setting forth different tests to assess whether a claimant has engaged in substantial gainful activity). Moreover, Plaintiff's earnings were considerably higher just prior to 2002 when she was engaged in the same occupation working for a company, and these earnings would qualify as SGA.

Indeed, the regulations permit the ALJ to consider this work performed prior to 2002. Plaintiff worked as a real estate agent for approximately twenty years. Prior to 2002 when she became self-employed as a real estate agent, she was working as a real estate agent making considerably more money annually. She maintained her real estate license and continued to use her real estate skills through 2015, when she alleges she ceased work because she could not perform the physical demands of the job. Here, as contemplated by the regulations, it appears that Plaintiff's work as a real estate agent prior to this fifteen year period involved the same knowledge, skill set, and processes as her work performed after 2002. Plaintiff argues in her objections that the skills and abilities she acquired in 2002 related to

11

computer use and document preparation have changed over time and are no longer applicable. However, Plaintiff maintained the same occupation through the time she was self-employed until 2015. Even if computer usage skills have evolved, many of her job activities that she described at the hearing, such as showing houses, arranging open houses, preparing contracts, and working with clients, are not related to computer use and document preparation and would certainly still be relevant. Therefore, this Court finds that the ALJ's determination that Plaintiff had transferable job skills from past relevant work that could be transferred to other occupations is supported by substantial evidence. This objection is overruled.

## II. Evaluation of Opinion Evidence

Plaintiff next objects to the Magistrate Judge's determination that substantial evidence supports the weight afforded to the medical opinion of Dr. Vest. Plaintiff argues the ALJ erred in affording Dr. Vest's opinion little weight and that his findings support a determination that Plaintiff is disabled.

An ALJ must consider and weigh all medical opinions included in a claimant's case. 20 C.F.R. § 404.1527(c). An ALJ should give the opinion of a treating physician controlling weight if that opinion is well-supported by "medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence" within the record. 20 C.F.R. § 404.1527(c)(2). Factors to consider when weighing medical opinions include whether the source examined or treated a claimant, the length and frequency of treatment, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion to the record as a whole, and whether the source is a specialist. 20 C.F.R. § 404.1527(c). In considering the appropriate weight to give a treating physician's opinion, an ALJ must give good reasons in explaining the weight given such an opinion. 20 C.F.R. § 404.1527(c)(2). In weighing this evidence, an ALJ must avoid substituting his own medical

12

judgment for that of the treating physician or physicians where the opinions of the treating physicians are supported by medical evidence. *See Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-CV-564, 2011 WL 549861, at *7 (S.D. Ohio 2011); *See generally Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985) (noting that the ALJ improperly discredited the opinions of a treating doctor by determining the opinion was contrary to the objective medical evidence in the file).[4] The ALJ also has the discretion to afford less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

The ALJ afforded Dr. Vest's opinion little weight. Plaintiff argues that the Magistrate Judge gives improper post hoc rationalizations for rejecting this opinion. The opinion provided by Dr. Vest was included within his responses to a questionnaire dated January 26, 2016. He opined that Plaintiff could sit and stand/walk for 0-2 hours, Plaintiff could occasionally lift and carry less than ten pounds, rarely lift and carry ten pounds, and never lift and carry twenty or fifty pounds. Dr. Vest also indicated that Plaintiff would have other limitations and would not be able to perform a full-time competitive job that required activity on a sustained basis. The ALJ considered Dr. Vest's opinion but then explained his reasons for ascribing little weight to this opinion. The ALJ explained that the opinion was inconsistent with the objective findings in the record, and further, that the opinion appeared exaggerated. The ALJ then gave specific examples to support this explanation, citing to the fact that the claimant's own testimony as to her own limitations and reported activities were inconsistent with some of his findings (including Dr. Vest's opinion, for example, that Plaintiff could not sit more than 2 hours in an 8 hour

---

[4] This claim was filed prior to March 27, 2017, the date upon which the regulations were amended regarding weight given to medical opinions. Therefore, this Court will consider whether the ALJ's decision comports with the regulations in effect at the time the claim was filed. *See* 20 C.F.R. § 404.1527 (noting that for claimed filed before March 27, 2017, the rules in this section should apply).

13

work day). The ALJ also explained that Plaintiff's consultative examination was unremarkable, aside from subjective complaints. In making this statement, the ALJ cited to Plaintiff's own function report, as well as the assessment by Dr. Vest. In her objections, Plaintiff argues that the Magistrate Judge provided post hoc rationalizations for determining that the ALJ's decision was supported by substantial evidence. However, within the R&R, the Magistrate Judge references the records and evidence located within the medical records that the ALJ cited to in discussing Dr. Vest's opinion. Further, as pointed out by the Magistrate Judge, the ALJ also discussed within his decision the findings by Dr. Robinson, who did not identify any work-related limitations. The Magistrate Judge further stated that Dr. Vest's own treatment notes prior to him providing the medical source statement do not put significant emphasis on Plaintiff's back problems. This aligns with the ALJ's explanation that Dr. Vest's opinions are not consistent with the objective findings in the record, his explanation that Plaintiff had received conservative treatment for her back pain, and that Plaintiff's physical examinations were generally unremarkable. This Court may not substitute its own judgment for that of the Commissioner when substantial evidence supports the record and the ALJ gave specific reasons for the weight afforded an opinion. SSR 96-2p. Here, the ALJ's decision to afford little weight to Dr. Vest is supported by substantial evidence. Accordingly, this objection is overruled.

### III. Evaluation of Subjective Complaints

Plaintiff further objects to the R&R on the ground that the ALJ failed to properly consider certain evidence in evaluating Plaintiff's subjective complaints; specifically, that the ALJ did not explain how Plaintiff's subjective complaints were inconsistent with the medical evidence of record and how Plaintiff's qualifying statements would be consistent with full-time work. The Magistrate Judge found that the ALJ properly evaluated Plaintiff's subjective complaints and that a review of the objective

14

medical evidence and Plaintiff's testimony supports such a finding.

In Social Security Ruling 16-3p, the Social Security Administration explains that the intensity and persistence of a claimant's symptoms should be evaluated to determine whether these symptoms limit the ability to perform work-related activities.[5] In evaluating a claimant's subjective symptoms, an ALJ must follows a two-step process: (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms; and (2) evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. SSR 16-3p; *see Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (explaining the two-step process in determining whether a person is disabled by pain or other symptoms). In following this process, an adjudicator should not evaluate a claimant's symptoms based solely on objective medical evidence, unless that evidence supports a finding that an individual is disabled. SSR 16-3p, 2016 WL 1119029, at *5 (dated March 16, 2016, with an effective date of March 28, 2016). If an ALJ cannot make a disability determination based solely on medical evidence, an individual's symptoms should be evaluated based on the evidence available in the record, including medical sources, statements from the individual, and any other source with information concerning the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *5. Factors relevant to the evaluation of a claimant's symptoms include daily activities, frequency of pain or other symptoms, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, treatment other than medication used to alleviate pain or other symptoms, other measures used to alleviate pain or other symptoms, and any other factors concerning a claimant's functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL

---

[5]SSR 96-7p was rescinded and superceded by SSR 16-3p, which became effective on March 28, 2016.

1119029, at *7. A claimant's subjective complaints need not be accepted if they are inconsistent with the available evidence, such as objective evidence of the underlying impairment and the extent to which the impairment could be expected to cause the symptoms alleged. *Craig*, 76 F.3d at 596.

In assessing Plaintiff's statements regarding her symptoms, under its scope of review, the Court cannot make credibility determinations but may review the ALJ's decision to determine whether substantial evidence supports the ALJ's credibility assessment. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). This Court is not tasked with the position of re-weighing evidence to make a new credibility determination. *See Hancock v. Astrue*, 667 F.3d 470, 471 (4th Cir. 2012) ("[i]n reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determination, or substitute our judgment for that of the [ALJ]") (citing *Johnson*, 434 F.3d at 653). Here, the Magistrate Judge found that the ALJ adequately explained why he discredited some of Plaintiff's subjective complaints. The ALJ discussed Plaintiff's activities of daily living he considered in determining that she was capable of the work described in the RFC. The ALJ also stated that he specifically considered the medical evidence, which was generally unremarkable.

This Court has considered Plaintiff's arguments in response to this finding, specifically the argument that the Commissioner erred in finding that Plaintiff had the ability to work on a sustained basis based on her qualifying statements about her activities of daily living. Here, the ALJ first stated that Plaintiff's statements concerning her symptoms were not fully consistent with the medical evidence of record, as well as the other evidence in the record. The ALJ then discussed Plaintiff's MRI results, noting the results showed mild to moderate disc degeneration, as well as noting that Plaintiff's injection treatments were effective for her back pain. The ALJ also pointed out that Plaintiff' was participating in physical therapy, as well as working part-time through 2015 as a real estate agent. The ALJ then

16

explained how Plaintiff's activities of daily living were consistent with the RFC in that, despite Plaintiff's allegations, evidence indicated she could take care of herself, clean her condominium, attend homeowners association meetings, go out to shows and to eat, attend church, and attend Chamber of Commerce meetings. The ALJ stated that these activities represented a fairly active lifestyle and the ability to function at a greater level than alleged. This case is therefore distinguishable from *Hines v. Barnhart*, cited by Plaintiff to suggest the ALJ erred in his decision. In *Hines*, the ALJ discredited testimony by the claimant that he had severe pain because it was inconsistent with his daily activities. The Fourth Circuit determined in that case that, when reading the claimant's testimony as whole, there was no inconsistency with respect to the evidence of record and the claimant's testimony regarding his pain. 453 F.3d 559, 565-566 (4th Cir. 2006). In Plaintiff's case, as noted by the ALJ, Plaintiff testified to the activities she could engage in which represented a fairly active lifestyle. While Plaintiff argues that she was actually limited in performing some of those activities, the ALJ explained that he took that into account by further limiting the RFC range of sedentary work. Moreover, this Court finds that substantial evidence supports the ALJ's decision given that he explained the fact that her ability to go to several meetings for various organizations outside the home, coupled with her testimony at the hearing that she served in some capacity on a local assessor board of appeals, would be inconsistent with her subjective symptoms of pain as alleged. Therefore, this Court finds that substantial evidence supports the ALJ's explanation that he adequately considered all of Plaintiff's testimony, and while finding that she was not disabled, limited her RFC to account for some of her subjective complaints of pain. Accordingly, this objection is overruled.

## **Conclusion**

The Court has thoroughly considered the entire record as a whole, including the administrative

transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections, and the applicable law. For the above reasons, the Court **ADOPTS** the Magistrate Judge's recommendation to affirm the Commissioner's decision. [ECF #18]. The Commissioner's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Florence, South Carolina  
March 25, 2019

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge